**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA, ex rel.**
**PDEF, INC.,**

                    *Plaintiff,*

    v.

**MIDDLE EAST FORUM**

                  *Defendant.*

Case No.    1:25-cv-537

FILED IN CAMERA AND UNDER SEAL
UNDER 31 U.S.C. § 3730(b)(2)

---

## QUI TAM COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

Qui Tam Plaintiff and Relator PDEF, Inc. ("Relator"), on behalf of the United States of America (the "Government"), brings this action against Defendant Middle East Forum ("MEF" or "Defendant") under the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"). Relator alleges, based upon personal knowledge, relevant documents, and information and belief, as follows:

### I.    INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United States of America arising from false or fraudulent records, statements and claims made and caused to be made by Defendant or its agents and employees in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq.

2.    Defendant MEF knowingly submitted, or caused to be submitted, false claims to the United States Small Business Administration ("SBA") in connection with its application for two Paycheck Protection Program ("PPP") loans: a first-round loan of $357,800 and a second-round loan of $258,185.

3.      Specifically, MEF made false certifications on two separate occasions. For the first-round loan, MEF falsely certified that it was "eligible to receive a loan under the rules in effect at the time [the] application [was] submitted." For the second-round loan, MEF falsely certified that it was not "primarily engaged in political or lobbying activities" and that it did not describe itself as a "think tank" in public documents. These false certifications directly contradict MEF's public statements about its activities and self-description as a "think tank."

4.      MEF's false certifications were material to the SBA's decision to approve the PPP loans: the Government relied on this false certification in approving MEF's loan applications, and the Government would not have approved the loans had it known the truth about MEF's activities and self-description.

5.      The materiality of these false certifications is further demonstrated by the fact that the United States has investigated the certifications of and demanded repayment from other organizations on the grounds that they described themselves as a "think tank" in public documents and have been engaged in political or lobbying activities.

## II.    JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confer jurisdiction on this Court for actions brought under 31 U.S.C. §§ 3729 and 3730.

7.      Venue is proper in this District under 31 U.S.C. § 3732(a) because Defendant transacts business in this District, and acts proscribed by 31 U.S.C. § 3729 occurred in this District.

## III.    PARTIES

8.    Relator PDEF, Inc. is a corporation organized under the laws of Wyoming. Relator brings this action on behalf of the United States Government under 31 U.S.C. § 3730(b)(1).

9.    Defendant Middle East Forum (MEF) is a domestic nonprofit corporation organized in Pennsylvania, with its principal place of business at 1650 Market Street, Suite 3600, Philadelphia, PA 19103. On the "About the Middle East Forum" page of its website, MEF describes itself as "a think tank founded in 1994 by Daniel Pipes, promotes American interests in the Middle East and protects Western values from Middle Eastern threats." MEF further states that it realizes its goals through various initiatives, including publishing "policy recommendations through the Middle East Quarterly," "monitor[ing] and influenc[ing] U.S. policy in the Middle East with a special interest in Iran and Israel" through its Washington Project," and "steer[ing] U.S. policy toward backing an Israel victory over the Palestinians" through an "initiative" called "The Israel Victory Project."

## IV.    APPLICABLE LAW

10.    The False Claims Act provides, in pertinent part, that any person who:

(1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement    material    to    a    false    or    fraudulent    claim;

(3) conspires to commit a violation of subparagraph (1), (2), (4), (5), (6), or (7); . . . or

(7) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or

decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a).

11.     For purposes of the False Claims Act, the terms "knowing" and "knowingly" mean that a person, with respect to information: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1).

12.     The PPP was established by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) to provide emergency financial assistance to businesses affected by the COVID-19 pandemic. It was implemented by the SBA with support from the Department of the Treasury.

13.     The PPP provided small businesses with funds to pay up to eight weeks of payroll costs including benefits. Funds could also be used to pay interest on mortgages, rent, and utilities.

14.     The Small Business Act states that with respect to PPP loans, "[e]xcept as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection [i.e. Section 7(a) aka § 636(a)]." 15 U.S.C. § 636(a)(36)(B).

15. To obtain a PPP loan, borrowers were required to certify that they were eligible for the loan and that the loan would be used for eligible expenses.

16. Businesses primarily engaged in political or lobbying activities are ineligible for SBA financial assistance.13 CFR § 120.110(r).

17. This longstanding restriction was expanded and made more explicit for second-draw PPP loans, which required applicants were required to certify: "The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents." Paycheck Protection Program as Amended by Economic Aid Act, 86 Fed. Reg. 3712, 3718 § IV(g)(3)(ii)(E) (Jan. 14, 2021) (to be codified at 13 C.F.R. pt. 120).

## V.    FACTUAL ALLEGATIONS

18. On or about April 14, 2020, MEF applied for and received its first PPP loan of $357,800. The PPP loan and accrued interest was forgiven on August 16, 2021.

19. On or about March 17, 2021, MEF applied for and received its second PPP loan of $258,185. The PPP loan and accrued interest (totaling $258,185) was forgiven on October 27, 2021.

20. MEF made false certifications in both of its PPP loan applications. For both the first-round and second-round loans, MEF falsely certified that it was eligible to receive PPP funds. Additionally, in its second-round loan application, MEF falsely certified that (a) it was not primarily engaged in political or lobbying activities, and (b) it did not describe itself as a think tank in public documents. These certifications directly contradict MEF's public

statements about its activities and self-description as a think tank engaged in political advocacy and policy research.

21.    Contrary to this certification, MEF describes itself on the "About" page of its website as a "a think tank founded in 1994 by Daniel Pipes,"[1] with at least two of its major projects aimed at influencing Congress and/or the Executive Branch with respect to Middle East policy.

22.    Admitting that it is primarily engaged in political activities and advocacy in areas such as public policy, its website details a number of political advocacy "Projects" and "Activities," including "The Washington Project [which] monitors and influences U.S. policy" and "The Israel Victory Project [which] is a Forum initiative to steer U.S. policy,"

23.    MEF's false certification was material to the Government's decision to approve the PPP loans. Had the Government known the truth about MEF's activities and self-description, it would not have approved the loan.

24.    By falsely certifying its eligibility for the PPP loans, MEF knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, in violation of the False Claims Act.

25.    The allegations set forth in this Complaint are based on Relator's independent knowledge and are not based on or derived from public disclosures as set forth in 31 U.S.C. § 3730(e)(4). Moreover, if a public disclosure is found, Relator herein is the original source of said disclosure and has duly reported all material allegations to the United States well before filing this Complaint.

---

[1]    https://www.meforum.org/about/about-the-middle-east-forum, last visited February 3, 2025

26.     To the extent that any allegations in this Complaint have been publicly disclosed, Relator qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B) because Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations and has voluntarily provided the information to the Government before filing this action.

## V.     CAUSES OF ACTION

### COUNT I
### 31 U.S.C. § 3729(a)(1)(A)
### (Violation of the False Claims Act)

27.     Relator realleges and incorporates by reference the allegations contained in Paragraphs 1 through 26 above.

28.     Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(A).

29.     By virtue of the false or fraudulent claims made by Defendant, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $13,946 to $27,894 for each violation.

### COUNT II
### 31 U.S.C. § 3729(a)(1)(B)
### (Violation of the False Claims Act)

30.     Relator realleges and incorporates by reference the allegations contained in Paragraphs 1 through 26 above.

31.     Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

32.    By virtue of the false records or statements made by Defendant, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty of $13,946 to $27,894 for each violation.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Relator prays for judgment against Defendant as follows:

(a)    That Defendant cease and desist from violating 31 U.S.C. § 3729 et seq.

(b)    That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $13,946 and not more than $27,894 for each violation of 31 U.S.C. § 3729.

(c)    That Relator be awarded the maximum amount allowed under § 3730(d) of the False Claims Act.

(d)    That Relator be awarded all costs of this action, including attorneys' fees and expenses.

(e)    That the United States and Relator recover such other relief as the Court deems just and proper.

## JURY DEMAND

Relator demands a trial by jury under Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

<u>/s/ Abdel-Rahman Hamed</u>
ABDEL-RAHMAN HAMED, ESQ.
DC Bar No. 1632130
**Hamed Law**
P.O. Box 25085
Washington, D.C. 20027

(202) 888-8846

Advocates@HamedLaw.com

| | |
|---|---|
| MARK ALLEN KLEIMAN, ESQ.* | BEN H. ELSON, ESQ.* |
| (California Bar No. 115919) | (Illinois Bar No. 6286106) |
| Kleiman Rajaram | G. FLINT TAYLOR, ESQ.* |
| 12121 Wilshire Boulevard | (Illinois Bar No. 2802058) |
| Suite 810 | People's Law Office |
| Los Angeles, CA 90025 | 1180 N. Milwaukee Ave |
| (310) 392-5455 | Chicago, Illinois 60642 |
| mark@krlaw.us | (773) 235-0070 |
| | ben@peopleslawoffice.com |

*Counsels for Qui Tam Plaintiff and Relator PDEF, Inc.*

\*motion to appear pro hac vice forthcoming